## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**JEFFREY RAY BEARD**                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 4:20-CV-P15-JHM**

**GRAYSON COUNTY DETENTION CENTER et al.**                      **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, Jeffrey Ray Beard, filed a *pro se*, *in forma pauperis* complaint pursuant to

42 U.S.C. § 1983.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A

and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by*

*Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, the Court will dismiss this

action.

### I. STATEMENT OF CLAIMS

Plaintiff is a convicted prisoner housed at the Grayson County Detention Center (GCDC).

He names as Defendants GCDC, the unknown number of owners of GCDC, and in their

individual and official capacities the following GCDC employees:  Jason Woosley, Bo Thorpe,

VanMeter, Nurse Rita, Kevin Doe, James Emory, Kyann Bennett, Ryann Taylor, Gail Basham,

Morris Basham, Kim Stevenson, and Matthew J-79.

The initial complaint (DN 1) concerns an incident in which he was stabbed in the eye by

another inmate.[1]  He explains the circumstances leading up to the stabbing as a disagreement

over a deal between himself and the unnamed inmate to sell breakfast trays for $1.00.  Plaintiff

states that he became upset and the other inmate "got uppity," then went to his cell, returned with

a pen, came back into Plaintiff's cell despite Plaintiff telling him not to enter, and stabbed him in

---

[1] Plaintiff filed his initial complaint on his own paper (DN 1).  In response to a notice of deficiency from the Clerk of Court, he resubmitted the complaint on this Court's approved form with additional claims and Defendants (DN 6).

the orbital socket.  Plaintiff states that he fell to the floor, got up, went to the door, pushed the emergency button, and called for help.  He asserts that GCDC did not "protect[] me from abuse or keep[] such animals from me."

Most of the allegations in Plaintiff's amended complaint (DN 6) concern issues that he sees in the day-to-day running of GCDC, job performances by its employees, and areas of concern he would like to investigate further.  For instance, he states that inmates' property is allowed to be taken from property room by trustees and that inmates are charged excessive fees. He states that GCDC "does the bare minimum 'if that' in quality and services and actually needs to be taken over by competent personnel."  Plaintiff makes many generalized complaints about GCDC's operation and management, such as the food service is "questionable," the management is terrible, and the medical service under Nurse Rita is non-existent.  He alleges that complaints are ignored by upper management; he has seen Jason Woosley only a few times at GCDC; and that Bo Thorpe does not "walk around to view for himself" what the complaints are for.  Plaintiff states that he would like to audit GCDC for corruption and investigate irregularities.  He states that he has heard several stories from other inmates regarding corruption and negligence and would like to bring a class action if he were able to talk to other inmates who came through GCDC.

Plaintiff alleges that Gail Basham, who works in the library, does not respect people and her husband Morris Basham "takes this authoritarian role" too far; and that Kim S. is very authoritarian and runs the library like a tyrant.  He alleges that Emory, Taylor, Bennett, and Matthew "are all listed for pure harassment and excessive B.S. for no reason other than harassment."

Plaintiff further alleges that he was kept in a segregated housing unit (SHU) for 57 or 58 days and that it was uncomfortably cold.  He states that Emory "has access to computer is able to adjust temperatures throughout this whole building and cold is used as punishment in this place and the temperature is not suppose to go below 70 [degrees.]"  The complaint states that inmates are allowed only "small thin blankets and sheet cover for worn out mats and the cloths they provide are in rags or wornout."  He further notes that he was not allowed to have coffee or a radio in SHU.

As relief, Plaintiff asks for monetary and punitive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3

In order to state a claim under § 1983, a plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988). None of the claims made by Plaintiff allege the violation of a federal right.

## A. Failure-to-protect claim

As to Plaintiff's claim against GCDC related to the eye-stabbing incident, in order to make out a constitutional failure-to-protect claim, a prisoner must show that a prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id*. at 835. Plaintiff cannot hold any of the individual Defendants liable unless he can show that they subjectively knew of an excessive risk of harm to Plaintiff's safety and then disregarded that risk. *Id*. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not state a claim for deliberate indifference. *Id*. at 838; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

Here, Plaintiff makes no allegation that any GCDC employee knew of a risk to Plaintiff from the other inmate. His own allegations make clear that the interactions between Plaintiff and the other inmate stemmed from a voluntary and clandestine deal between the two of them and that, although Plaintiff had access to an emergency button, he did not use it to alert staff or ask for help until after he was stabbed. Plaintiff thus fails to state a claim for failure to protect.

4

**B. Generalized complaints/observations regarding GCDC**

To the extent that Plaintiff makes various generalized claims regarding injustices or harms that he has seen or heard about at GCDC, he has failed to allege that he himself has been deprived of any federal right or suffered any personal harm, and as such, has failed to state a plausible claim for relief pursuant to § 1983. And with respect to Plaintiff's generalized allegations regarding prison officials not fulfilling their duties and the conditions of confinement, *e.g.*, that the food service is "questionable" and that the medical service under Nurse Rita is non-existent, the claims he makes are too vague and conclusory to raise a plausible claim for relief. The Court is not required to accept conclusory and unsupported statements, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001), like these put forward by Plaintiff. These claims will be dismissed for failure to state a claim upon which relief may be granted.

**C. Harassment claims**

Plaintiff's allegations of harassment and unfair treatment by various Defendants also fail to state a § 1983 claim. Plaintiff alleges that Gail Basham does not respect people; that Morris Basham and Kim S. are authoritarian; and that Emory, Taylor, Bennett, and Matthew engage in harassment. First, it is not clear that any of the alleged actions by these Defendants were aimed at Plaintiff, and Plaintiff may not raise claims on behalf of other inmates. *Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) ("[N]on-attorneys proceeding pro se cannot adequately represent a class."). Regardless, none of these allegations rise to the level of a § 1983 claim.

Although reprehensible and not condoned, verbal abuse and harassment are insufficient to state a constitutional violation under § 1983. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim.");

*George v. Ballard*, No. 5:16-482-KKC, 2017 WL 88987, at *3 (E.D. Ky. Jan. 9, 2017) ("It has long been established that a prison guard's verbal abuse or general harassment of an inmate does not violate the Eighth Amendment.").  Plaintiff's allegations of lack of respect, authoritarianism, and harassment, therefore, fail to state a claim upon which relief may be granted and will be dismissed.

**D. Claims related to segregation**

Plaintiff alleges that he was kept in the SHU for 57 or 58 days; that it was uncomfortably cold in SHU; and that Emory "is able to adjust temperatures throughout this whole building and cold is used as punishment in this place and the temperature is not suppose to go below 70 [degrees.]"  The complaint states that inmates are allowed are given "small thin blankets" and clothes which he describes as "in rags or wornout."  He further notes that he was not allowed to have coffee or a radio in the SHU, unlike federal prison.

Neither the fact nor the length of his time in the SHU nor the allegation that he was uncomfortably cold or was not provided coffee and a radio state a federal claim.

The Sixth Circuit has held that "[b]ecause placement in segregation is a routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment violation."  *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (holding allegations of confinement in administrative segregation for "three years and running" failed to state an Eighth Amendment claim) (citation omitted).

A sufficiently serious deprivation might be found where an inmate is subjected to a low cell temperature at night, not provided blankets, and deprived of his basic need for warmth. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  However, "constitutionally adequate housing is not

denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation

endangers inmates' health." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1122-23 (M.D. Tenn. 1982).

It is clear from the complaint that Plaintiff was provided with clothes and a blanket,

although the blanket was "thin" and the clothes worn out.  This is not a situation in which

Plaintiff alleges that prison officials exposed him to temperatures that were close to freezing and

failed to provide him adequate clothing and blankets. *See Franklin v. Franklin*, No. 97-4365,

2000 WL 687434, at *4 (6th Cir. May 16, 2000) (holding that allegations that prison officials

exposed prisoner to temperatures that were close to freezing and failed to provide him adequate

clothing and blankets alleged a constitutional violation); *see also Berryman v. Johnson*, Nos. 88-

1239, 88-1280, 1991 WL 150808, at *12 (6th Cir. Aug. 6, 1991) ("[W]e reject the notion that

healthy men of these ages, both of whom admittedly had blankets, could not be expected to

withstand periodic exposure to temperatures in the fifties.").  The Court further notes that it does

not appear that Plaintiff has any basis for his assertion regarding cell temperature other than the

fact that he felt cold.  *See Payette v. Trierweiler*, No. 2:10-cv-8, 2010 WL 3937158, at *7 (W.D.

Mich. Oct. 4, 2010) (concluding that prisoner's claim regarding cold cell temperature did not

state a constitutional violation where prisoner did not allege that he was deprived of clothing to

stay warm and had no basis for his assertion as to the cell temperature except that he felt cold).

In short, Plaintiff has failed to state a claim with regard to the allegedly cold temperatures in his

cell.

Finally, conditions of confinement which deprive inmates of the minimal civilized

measure of life's necessities may state an Eighth Amendment claim. *Rhodes v. Chapman*, 452

U.S. 337, 347 (1981).  However, the deprivation of coffee and a radio while housed in the SHU

does not state a claim upon which relief may be granted. *See, e.g.*, *Sautter v. Halt*, No.

7

4:12CV2399, 2015 WL 1915251, at *10 (N.D. Ohio Apr. 27, 2015) ("While a radio may make life in prison more pleasant, it certainly is not one of "the minimal civilized measure of life's necessities."  (quoting *Rhodes*, 452 U.S. at 347)).

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date: July 15, 2020

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants
        Grayson County Attorney
4414.009